

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

April 29, 1963

Honorable Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. C-69

Re: Whether the provisions
of Article 666b, Vernon's
Civil Statutes, must be
complied with in order that
payment of rental of a
dwelling house for business
managers of certain insti-
tutions be a legal charge
against State funds.

Dear Mr. Calvert:

This is to acknowledge the receipt of your opinion request, from which we quote in part:

"Special provisions pertaining only to the special schools and institutions under the Texas Youth Council which are found in Senate Bill 1, Acts of the 57th Legislature, First Called Session, provides in part as follows:

'The Business Managers of all institutions shall be furnished a house, utilities and laundry.'

"Article 666b, R.C.S., Section 1 provides:

'Hereafter all departments and agencies of the State Government, when rental space is needed for carrying on the essential functions of such agencies or departments of the State Government, shall submit to the State Board of Control a request therefor, giving the type, kind and size of building needed, together with any other necessary description, and stating the purpose for which it will be used and the need therefor.'

"The State being required to furnish a house, no house being available on the grounds of the institution, would the payment of a bill for rental of a dwelling be a legal charge against State funds if the requirements of Article 666b, R.C.S. have not been complied with?"

The opinion request did not state facts which would indicate in what manner Article 666b, Vernon's Civil Statutes was not complied with. An examination of the purchase voucher which was enclosed with the request shows that the Texas Youth Council apparently contracted to furnish housing for the business manager of the Mountain View School for Boys.

It must be presumed, therefore, that the question presented is whether the Texas Youth Council must comply with the provisions of Article 666b, Vernon's Civil Statutes, in renting a house for said business manager in order to create an obligation which is binding upon the State. In answering this question, it is necessary to review the statutes creating the Texas Youth Council and the construction of such laws by the Attorney General and the Departments concerned.

Article 5143d, Vernon's Civil Statutes, the legislative act creating the Texas Youth Council and Attorney General's opinions construing it, leave no doubt that in creating the Texas Youth Council, the Texas Legislature intended to create an organization that would have complete control and administration of the State's correctional facilities for delinquent children. Attorney General's Opinions Nos. WW-828 (1960) and WW-1183 (1961).

The following provisions of Article 5143d, Vernon's Civil Statutes, state in unmistakable language the broad duties and responsibilities that have been delegated to the Texas Youth Council.

Section 4(f) states:

"Sec. 4 (f). The Texas Youth Council shall assume the administrative control, supervision, direction and operation of all facilities, institutions, training of state wards and parole supervision of state wards now under the control of the State Youth Development Council and shall further assume the administrative control and supervision of the Corsicana State Home, the Texas Blind, Deaf and Orphan School, and the Waco State Home."

Section 6(d) states:

"Sec. 6 (d). Administer the diagnostic
treatment and training and supervisory facilities
and services of the state for delinquent child-
ren committed to the state. Manage and direct
state training school facilities and provide for
the coordination and combination of such facili-
ties, as deemed advisable by the Texas Youth Coun-
cil, and for the creation of new facilities with-
in the total appropriation provided by the Legis-
lature; exercise administrative control and super-
vision over all other institutions and facilities
under its jurisdiction;"

Section 6(e) states:

"Sec. 6 (e). Before each convening date of
the Regular Session of the Legislature, make a
report to the Governor and Legislature of its ac-
tivities and accomplishments and of its findings
as to its major needs relative to the handling
of the children committed to it by courts of the
state. The report shall include specific recom-
mendations for legislation, planned and drafted
as part of an integrated, unified and consistent
program to serve the best interest of the state
and the youth committed to the Texas Youth Coun-
cil; and recommendations for the repeal of any
conflicting obsolete or otherwise undesirable
legislation affecting youth."

Section 19 states:

"Sec. 19. The Youth Council shall have the
management, government and care of the Gatesville
State School for Boys, the Gainesville State School
for Girls, the Crockett State School for Negro Girls,
and of all other facilities hereafter established by
the state for the custody, diagnosis, care, training
and parole supervision of delinquent children com-
mitted to the state."

Section 20 states:

"Sec. 20. The Youth Council shall, from time
to time, appoint a superintendent for each of said

schools and institutions, and upon the recommendation of the superintendent shall appoint all other officials, chaplains, teachers, and employees required at said schools and institutions and shall prescribe their duties. . .

"The salaries, compensation, and emoluments of the superintendents and subordinate officials, teachers, and employees shall be fixed as provided by the Legislature."

Section 26 states:

"Sec. 26. When funds are available for the purpose, the Youth Council may:

(a) Establish and operate places for detention and diagnosis of all delinquent children committed to it;

(b) Establish and operate additional treatment and training facilities, including forestry or parks-maintenance camps and boys' ranches, necessary to classify and segregate and handle juvenile delinquents of different ages, habits and mental and physical condition according to their needs;. . ."

The desire of the Legislature to create a separate department independent of all other State agencies is clearly evidenced by Section 41 of Chapter 281, Acts of the 55th Legislature, Regular Session, 1957, quoted in part as follows:

"The fact that juvenile delinquency is one of the major problems confronting the State. . . and this major problem of our State demands special attention and demands the services of a separate, specialized agency to deal therewith; the fact that the present administrative structure of the State Youth Development Council does not adequately locate responsibility and accountability. . . "

Senate Bill 1, Acts of the 57th Legislature, 1st Called Session, 1961, directs the Texas Youth Council to furnish the business manager of all institutions under the Texas Youth Council as follows:

"Sec. 41. EMOLUMENTS. The Superintendents of all institutions under the Council shall be furnished a house, utilities, laundry and maid. The Business Managers of all institutions shall be furnished a house, utilities and laundry. The Assistant Superintendents of the Gatesville State Schools, Mountain View School and the Gainesville State School shall be furnished a house, utilities and laundry. The Dean of Students of the Waco State Home and the Corsicana State Home shall be furnished a house and utilities. No other employees of these institutions shall be granted emoluments. Commissary privileges shall not be available to any employee of the Youth Council."

In passing upon the authority of the Texas Youth Council to procure rent housing for such business managers under a similar legislative mandate, Attorney General's Opinion WW-760 (1959) stated:

"Since your opinion request states that no housing is available at the Crockett School, and the Legislature did not specify that a house was to be built by the Texas Youth Council, and did not provide funds for erecting a building, and it is clear that it intended that the Business Manager of Crockett School was to be housed at the State's expense, it is our opinion that the Texas Youth Council may provide a house for the Business Manager of this School by paying a reasonable amount of rent for such housing.

"The question as to the Comptroller's authority to issue warrants in payment of such rent is also answered in the affirmative. The Comptroller has only the ministerial duty of issuing the State warrants." (Emphasis added).

The same situation that existed at the Crockett State School for Girls exists at the Mountain View School for Boys. Neither institution has housing available, nor funds to build such a house, and, therefore, the Texas Youth Council in compliance with the legislative mandate, must furnish a house and utilities to the business manager by renting. The quoted portion of the opinion clearly indicates that Article 666b, Vernon's Civil Statutes, need not be complied with in procuring such housing.

Indeed, both the Texas Youth Council and the State Comptroller's office have by departmental construction of the pertinent statutes recognized the authority of the Texas Youth Council to procure such housing without compliance with Article 666b, Vernon's Civil Statutes.

Since Attorney General's Opinion WW-760 (1959) was written, approximately Four Thousand Dollars has been paid out from the State Treasury for rent in lieu of house and utilities for the business manager at the Crockett State School for Girls, and approximately One Thousand One Hundred Dollars has been paid out for rent in lieu of house and utilities for the business manager of the Mountain View School for Boys.

Where there are no court decisions construing a particular statute, the Attorney General must look to the construction placed upon such laws by the Departments involved and by prior Attorney General's opinions. Nor will an opinion of a prior Attorney General be overruled unless it is clearly erroneous. Attorney General's Opinion No. O-1044 (1939).

We are, therefore, of the opinion that the Texas Youth Council may create a legal obligation on the part of the State in renting a house and furnishing utilities for such business manager without complying with Article 666b, Vernon's Civil Statutes, in those instances where the institution under the Council does not have housing available for its business managers.

### S U M M A R Y

The Texas Youth Council is the State agency authorized by the Legislature to procure housing and utilities for the business managers of institutions under its control on a rental basis when housing is unavailable at such institutions, and in so doing need not comply with the provisions of Article 666b, Vernon's Civil Statutes.

Sincerely,

WAGGONER CARR
Attorney General

By: Jerry Brock
Assistant

JB:mkh

Hon. Robert S. Calvert, page 7 (C- 69    )


APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
W. O. Shultz
Roger Tyler
Cecil Rotsch
Corbin Lee Snow, Jr.

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone